IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
_____

JOHN R. SIMS, JR.,

                  Plaintiff,

                                                   Civ. Action No.
                  v.                            3:12-CV-0205 (TJM/DEP)


SUE NICHOLS, individually, in her capacity
as administrator of the estate of John R.
Sims and in her capacity as executor of the
estate of Doris Nichols, ESTATE OF DORIS
NICHOLS, SUSAN ENGLISH, ESQ.,
KRISTEN K. LUCE, ESQ., MARK GORGOS,
ESQ., COUGHLIN AND GERHART, LLP,
EUGENE PECKHAM, in his capacity as
former Broome County Surrogate's Court
Judge, and REBECCA MALMQUIST, in her
capacity as Broome County Surrogate's Court
Chief Clerk,

                  Defendants.


_____


APPEARANCES:

JOHN R. SIMS, JR., *Pro se*
776 Marilyn Avenue
Apartment 2A
Glendale Heights, Illinois 60139

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT, RECOMMENDATION AND ORDER

Plaintiff John R. Sims, Jr., who is proceeding *pro se* and seeks leave to proceed in this matter *in forma pauperis* ("IFP"), has commenced this action alleging civil rights violations under 42 U.S.C. §§ 1981 and 1985, as well as claims under New York statutory and common law.  As described by plaintiff, the lawsuit seeks to recover damages resulting from an alleged conspiracy and scheme to defraud by the named defendants the object of which was to obtain assets from the estate of John R. Sims, plaintiff's father, for the benefit of defendants Sue Nichols, the Estate of Doris Nichols, the named defendant attorneys, and others.

Having afforded plaintiff the deference to which he is entitled as a *pro se* litigant and liberally construed his pleading, I have nonetheless concluded that although plaintiff's IFP application can be granted, his complaint should be dismissed for lack of subject matter jurisdiction, failure to state a cause of action, and as frivolous.

2

I.      BACKGROUND[1]

Plaintiff's complaint arises out of the administration of his father's estate in Broome County Surrogate's Court, a proceeding that spanned over a period of nearly six years.  *See generally* Complaint (Dkt. No. 1). The essence of plaintiff's complaint is that defendants conspired to deprive him of his inheritance.  Though plaintiff's complaint is prolix, consisting of 111 pages and more than 291 paragraphs, the facts herein recited will be limited to those necessary to provide context to my ultimate recommendation that the action be dismissed.[2]

Plaintiff is one of three sons born to John R. and Margaret Sims. Complaint (Dkt. No. 1) ¶ 14.  John and Margaret Sims separated in December 1970.  *Id.* at ¶ 17.  Following Margaret's death in February 1973, John Sims moved into the home in which he had lived with his deceased wife, located on 3603 Beatrice Lane, with Doris Nichols and

---

[1]      In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's amended complaint, the contents of which have been accepted as true for purposes of the court's initial review.  *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 1965 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 1734 (1964).

[2]      The substantive allegations of the complaint are preceded by fifteen pages, which appear to be a table of contents that is largely incomprehensible. Complaint (Dkt. No. 1) p. i-xvi.  The words "Error! Bookmark not defined", for example, appear repeatedly throughout that portion of plaintiff's pleading.  *See id.*

with one of her two then-adult children, Sue Nichols.  *Id.* at ¶ 18.  John

and Doris married several years later, in 1987.  *Id.* at ¶ 20.

On or about March 1, 2000, John Sims was diagnosed with

leukemia.  Complaint (Dkt. No. 1) ¶ 27.  Less than two years later, he died

while receiving cancer treatment in Buffalo, New York.  *Id.* at ¶ 33.

Sometime before his death, Doris Nichols had left the marital residence,

evidently without the two becoming divorced.  *Id.* at ¶ 32.  On February 14,

2002, Doris informed plaintiff that his father had died without a will, and

that her attorney had advised her that she had inherited his entire estate.

*Id.* at ¶ 37.  According to plaintiff, John Sims maintained a will, which he

kept in a safe deposit box, and Doris Nichols refused to look for it.  When

plaintiff confronted Doris Nichols about her assertion, he was informed by

defendant Sue Nichols that she was the administrator of John Sims'

estate, and she threatened to file suit if plaintiff called her mother again.

*Id*. at ¶ 38.

Plaintiff filed a petition for letters of administration for the estate of

his father in Broome County Surrogate's Court on or about April 7, 2003.

Complaint (Dkt. No. 1) ¶ 81.  Plaintiff claims that he later received a

telephone call from the chief clerk of the court, who is not named as a

defendant in this lawsuit, attempting to persuade him that he did not have the right to file a petition and also advising that his petition was being rejected for filing because it failed to comply with the court's rules, including that plaintiff submit an original petition for filing. *Id*. at ¶¶ 83-84.

On or about July 22, 2005, defendant Sue Nichols commenced proceedings in Broome County Surrogate's Court to be appointed administrator of the estate of John Sims. Complaint (Dkt. No. 1) ¶ 101. Plaintiff alleges that at various times throughout the surrogate's court proceeding defendant Nichols committed perjury regarding, among other things, the location of Doris Nichols' residence before her death, the extent of John Sims' property, and the existence of a will.[3]  *See generally*,

---

[3]  Plaintiff additionally maintains that defendant Nichols violated various sections of the New York Penal Law by filing false instruments with the court and committing perjury. Complaint (Dkt. No. 1) ¶¶ 120-21, 163-64. Plaintiff also made these allegations during the course of the surrogate's court proceeding. The court refused to consider those accusations, however, and suggested that Sims contact the district attorney's office. *Id*. at ¶ 209. Plaintiff alleges that he filed a complaint with the Broome County District Attorney and the New York State Bureau of Crime Investigation alleging "crimes against his father's estate including conspiracy, scheme to defraud in the first degree the creditors and beneficiaries of the estate of John Robert Sims, unlawfully concealing Mr. Sims' will; grand larceny criminal possession of stolen property[,] . . . and that Judge Eugene Peckham had knowledge of a fraud perpetrated upon the Surrogate's Court, failed to take action required by his office to prevent fraud, and used the authority of his office to assist in the fraud." *Id*. at ¶ 171. Though plaintiff did not receive a response from the New York State Bureau of Crime Investigation, he was contacted by an investigator from the district attorney's office. *Id*. at ¶¶ 172, 207. Although it is not entirely clear from plaintiff's complaint, it appears that an investigation of plaintiff's complaint of criminal conduct by the district attorney's office was not pursued. *Id*. at ¶ 212. Plaintiff also made complaints to various state

Complaint (Dkt. No. 1).  After apparently extensive surrogate's court proceedings in which plaintiff actively participated, including by filing written objections to Nichols' appointment as administrator and pursuing discovery, on January 31, 2006, defendant Nichols was issued temporary letters of administration.  *Id.* at ¶ 168.  Thereafter, Nichols filed a November 22, 2006 accounting, to which plaintiff filed written objections.[4]  *Id.* at ¶ 190.

On November 14, 2007, the surrogate's court issued an order settling the estate of John Sims and releasing defendant Nichols from liability.  Complaint (Dkt. No. 1) ¶ 234.  Plaintiff appealed that order to the New York State Supreme Court, Appellate Division, Third Department, and was granted leave to proceed IFP in connection with that appeal.  *Id.* at ¶¶ 236-39.  After Nichols moved to dismiss the appeal for failure to

---

agencies regarding the surrogate's court clerk as well as Judge Peckham which, it appears, were largely rejected as being baseless.  *Id*. at ¶¶ 87-94, 98, 100.

[4]      On January 11, 2007, Judge Peckham struck as irrelevant certain allegations made by plaintiff in his objections to the letters of administration granted defendant Nichols, and on May 14, 2007, Judge Peckham rejected plaintiff's allegations that defendant Nichols committed crimes against his father's estate. Complaint (Dkt. No. 1) ¶¶ 206, 209.  Thereafter, plaintiff sought Judge Peckham's recusal on the grounds of bias and prejudice against plaintiff, and additionally on the basis that the judge was "aiding and abetting in the crimes"; plaintiff also requested a stay pending determination of that motion and an investigation of the alleged criminal conduct of Judge Peckham, defendant Nichols and her attorney, and the chief clerk of surrogate's court.  *Id.* at ¶¶ 216-220.  Plaintiff's motions were denied by Judge Peckham on August 3, 2007.  *Id.* at ¶ 222.

timely perfect, the court issued an order directing plaintiff to perfect his appeal by July 7, 2008; thereafter, plaintiff requested and was granted and extension of time. *Id.* at ¶¶ 235, 238, 247, 250. Plaintiff nonetheless failed to perfect his appeal. *Id.* at ¶ 251.

On February 21, 2008, defendant Nichols was granted an extension of her letters of administration. Complaint (Dkt. No. 1) ¶ 242. It appears that the estate of John Sims was finally settled by order of the surrogate's court of January 15, 2009. *Id.* at ¶ 255. Plaintiff filed a notice of appeal from that order, although it is unclear whether he pursued that appeal any further. *See id.* at ¶ 256.

## II.   PROCEDURAL HISTORY

Plaintiff's complaint was filed with this court on January 30, 2012, accompanied by an application to proceed *in forma pauperis*.[5] Dkt. Nos. 1 and 2. The complaint alleges violations of sections 1985(3) and 1981, breach of fiduciary duty, aiding and abetting fiduciary duty, violation of New York Judicial Law § 487, unjust enrichment, and *respondeat superior* liability. The federal claims are alleged against Surrogate's Court Judge

---

[5]      Plaintiff has filed two separate documents identified as "Verified Complaint" which appear to be an original and a copy of the same pleading, although the second contains a New York State court caption. *See* Dkt. No. 1-1.

Eugene Peckham, Deputy Clerk Malmquist, defendant Nichols, and two of her attorneys, Susan L. English and Kristen K. Luce, Esq., both of Coughlin and Gerhart, LLP, apparently on the theory that these attorneys participated in the alleged fraud as Nichols' agents.  The New York claims are asserted solely against Nichols and her various lawyers, who were all associated with Coughlin and Gerhart, LLP.  Plaintiff seeks an award of compensatory, treble, and punitive damages in an amount no less than $8,600,000, plus costs and attorney's fees.  Plaintiff's complaint and IFP application have been referred to me for review, pursuant to 28 U.S.C. § 1985(e).

III.    DISCUSSION

        A.    *In Forma Pauperis* Application

        As to plaintiff's *in forma pauperis* request, after a careful review of plaintiff's application, the court finds that plaintiff qualifies for IFP status. Plaintiff's request for permission to proceed *in forma pauperis* in this action will therefore be granted.

        B.    Standard of Review

        Since the court has found that plaintiff meets the financial criteria for commencing this case *in forma pauperis*, I must next consider the

8

sufficiency of the allegations set forth in his pleading in light of 28 U.S.C. §

1915(e).  Section 1915(e) directs that, when a plaintiff seeks to proceed *in*

*forma pauperis*, "(2) . . . the court shall dismiss the case at any time if the

court determines that – . . . (B) the action . . . (I) is frivolous or malicious;

(ii) fails to state a claim on which relief may be granted; or (iii) seeks

monetary relief against a defendant who is immune from such relief."  28

U.S.C. § 1915(e)(2)(B).  Thus, the court is entrusted with a gatekeeping

responsibility to determine that a complaint may be properly maintained in

this district before it may permit a plaintiff to proceed with an action *in*

*forma pauperis*.  *See id.*

In deciding whether a complaint states a colorable claim a court

must extend a certain measure of deference towards *pro se* litigants,

*Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and

extreme caution should be exercised in ordering *sua sponte* dismissal of a

*pro se* complaint before the adverse party has been served and the

parties have had an opportunity to respond, *Anderson v. Coughlin*, 700

F.2d 37, 41 (1983).  There is, nonetheless, an obligation on the part of the

court to determine that a claim is not frivolous before permitting a plaintiff

to proceed.  *See Fitzgerald v. First East Seventh St. Tenants Corp.*, 221

F.3d 362, 363 (2d Cir. 2000) (district court may dismiss frivolous complaint *sua sponte* notwithstanding fact the plaintiff has paid statutory filing fee); *Wachtler v. Cnty. of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) (district court has power to dismiss case *sua sponte* for failure to state a claim).

"Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.'" *Aguilar v. United States*, Nos. 3:99-MC-304, 3:99-MC-408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (Burns J.) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325, 109 S. Ct. 1827, 1831 (1989) and *Pino v. Ryan*, 49 F.3d. 51, 53 (2d Cir.1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory, for the purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").[6]

When reviewing a complaint under section 1915(e), the court may also look to the Federal Rules of Civil Procedure.  Rule 8 provides that a pleading that sets forth a claim for relief shall contain "a short and plain

---

[6]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

statement of the claim showing that the pleader is entitled to relief [.]"
Fed.R.Civ.P. 8(a)(2).  The purpose of Rule 8 "'is to give fair notice of the
claim being asserted so as to permit the adverse party the opportunity to
file a responsive answer [and] prepare an adequate defense.'"  *Hudson v.
Artuz*, No. 95 CIV. 4768, 1998 WL 832708, *1 (S.D.N.Y. Nov. 30, 1998)
(quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16
(N.D.N.Y.1995) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498
(D.D.C.1977))) (other citation omitted).

A court should not dismiss a complaint if the plaintiff has stated
"enough facts to state a claim to relief that is plausible on its face."  *Bell
Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974
(2007).  "A claim has facial plausibility when the plaintiff pleads factual
content that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S.
Ct. 1937, 1949 (2009) (citation omitted).  Although the court should
construe the factual allegations in the light most favorable to the plaintiff,
"the tenet that a court must accept as true all of the allegations contained
in a complaint is inapplicable to legal conclusions."  *Id.*  "Threadbare
recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S. Ct.1955).  Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. Rule Civ. Proc. 8(a)(2)).

  C. <u>Subject Matter Jurisdiction</u>

  At the outset, it appears that the court lacks jurisdiction over plaintiff's claims.  It is well recognized that "[a] court shall, *sua sponte*, dismiss a complaint for lack of subject matter jurisdiction as soon as it is apparent that it lacks subject matter jurisdiction." *Eckert v. Schroeder, Joseph & Associates*, 364 F. Supp. 2d 326, 327 (W.D.N.Y. 2005) (citing *Hughes v. Patrolmen's Benevolent Ass'n of the City of N.Y., Inc.*, 850 F.2d 876, 881 (2d Cir. 1988), *cert. denied*, 488 U.S. 967, 109 S. Ct. 495 (1988)). Plaintiff's claims in this action seem to fall squarely within the *Rooker-Feldman* doctrine, which prohibits the court from reviewing state court decisions.[7]

  The *Rooker-Feldman* doctrine recognizes that, with the exception of

---

   [7]  This doctrine emanates from two United States Supreme Court decisions, *District of Colombia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149 (1923).

the Supreme Court, federal courts are not authorized to exercise appellate

jurisdiction over state-court judgments.  *McKithen v. Brown*, 481 F.3d 89,

96 (2d Cir. 2007); *see also Vargas v. City of New York*, 377 F.3d 200, 205

(2d Cir. 2004) (holding that the *Rooker-Feldman* doctrine was not confined

to claims seeking direct review of judgments of state courts but extended

also to claims that could have been brought in state court and were

inextricably intertwined with earlier state court determinations).

Recognizing that many courts have applied *Rooker-Feldman* in a manner

which effectively expands its boundaries well beyond those envisioned in

the two seminal decisions, the Supreme Court emphasized the narrow

limits of the rule in *Exxon Mobil Corporation v. Saudi Basic Industries*

*Corporation*, observing that "[t]he *Rooker-Feldman* doctrine . . . is confined

to cases . . . brought by state-court losers complaining of injuries caused

by state-court judgments rendered before the district court proceedings

commenced and inviting district court review and rejection of those

judgments."  544 U.S. 280, 283-284, 125 S. Ct. 1517, 1522 (2005).  The

Court distinguished such rare situations, which implicate a district court's

subject matter jurisdiction, from the more common instance where a

federal plaintiff does not seek to undo a state judgment, but rather

"present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party[.]" *Id.* at 284, 125 S. Ct. at 1527.  The Court noted that in cases involving parallel or related state and federal cases which do not include a direct challenge of a state court determination, other tenets, involving the non-jurisdictional law of preclusion, as governed in part by the Full Faith and Credit Act, 28 U.S.C. § 1738, and the judicially created rules of abstention, are appropriately consulted.  *Id.* at 284, 125 S. Ct. 1527 (citation and internal quotation marks omitted); *compare Vargas*, 377 F.3d at 205 (holding that the *Rooker-Feldman* doctrine was not confined to claims seeking direct review of judgments of state courts but extended also to claims that could have been brought in state court and were inextricably intertwined with earlier state court determinations).  In short, the Court's decision in *Exxon Mobil* effectively laid to rest the suggestion asserted by many courts – including the Second Circuit – that the *Rooker-Feldman* doctrine and state court preclusion law are co-extensive, pointedly noting that the canon "does not otherwise override or supplant preclusion doctrine[.]" 544 U.S. at 284, 125 S. Ct. at 1522.

"Where constitutional claims are not raised in the state court

14

proceeding, there is no federal court subject matter jurisdiction if the claim is 'inextricably intertwined' with the state court judgment."  *McKithen,* 481 F.3d at 96 (citing. *Feldman*, 420 U.S. at 483, 103 S. Ct. at 1315).  The crucial question in making that determination is

> whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment. If the injury alleged resulted from the state court judgment itself, *Rooker-Feldman* directs that the lower federal court lacks jurisdiction.

*Azmendi v. Roth,* No. 99 CIV. 3663(WK)(DF), 2002 WL 441283, at *8 (S.D.N.Y. Mar. 20, 2002) (quoting *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996)).

In the Second Circuit, there are four requirements for the application of *Rooker-Feldman*:  1) the federal-court plaintiff must have lost in state court, 2) the plaintiff must complain of injuries caused by a state-court judgment; 3) the plaintiff must invite district court review and rejection of that judgment, and 4) the state-court judgment must have been rendered before the district court proceedings commenced.  *McKithen*, 491 F.3d at 97.  "A plaintiff may not overcome the doctrine and seek a reversal of a state court judgment 'simply by casting his complaint in the form of a civil rights action.'" *Rabinowitz*, 329 F. Supp. 2d at 376 (quoting *Ritter v. Ross*,

15

992 F.2d 750, 754 (7th Cir. 1993)).  To the contrary, notwithstanding allegations that the state court action was unconstitutional, where the constitutional injuries alleged derive from the state-court judgments themselves, the court has no jurisdiction over them.  *Azmendi,* 2002 WL 441283, at * 10.

While plaintiff asserts violations of federal statutes, denial of due process, and discrimination, and seeks monetary damages rather than a direct reversal of the surrogate's court judgment, a decision in plaintiff's favor in this lawsuit would clearly undermine the outcome of that state court proceeding.  Accordingly, this is precisely the type of federal court action precluded by the *Rooker-Feldman* doctrine.  Indeed, the circumstances presented in this action are closely akin to those recently encountered by District Judge Kahn in *Castiglione v. Papa*, No. 1:09-CV-0967, 2010 WL 2044688, at *6-8 (N.D.N.Y. May 24, 2010) (Kahn, J.).  In that case the plaintiff, a *pro se* litigant, asserting claims, *inter alia*, under sections 1983, 1985, and 1986, alleging that each of the named defendants played a role in an alleged conspiracy ultimately meant to deprive her of her rightful inheritance under her father's will and accomplished through constitutional and state law violations.  Following

16

the death of the plaintiff's father's, the plaintiff's mother sought probate of

an unsigned copy of the plaintiff's father's will and codicil, which the

plaintiff challenged on various grounds relating to their authenticity and

accuracy.  The New York surrogate's court rejected the plaintiff's claims,

and that determination was affirmed on appeal.  Having lost in state court,

the plaintiff commenced a federal court action, insisting that she was not

appealing the state court rulings but instead seeking damages for

constitutional and state violations that occurred during the probate

process.  In granting the defendants' motion to dismiss, Judge Kahn

determined that the fact that plaintiff added new claims not addressed in

state court to her federal court lawsuit did not avoid the implications of

*Rooker-Feldman*, emphasizing that "[t]he new claims, such as those

involving the bribery of judges [we]re wholly conclusory, completely

unsupported by facts, and simply asserted as a way of explaining the

state court decisions that Plaintiff now seeks this Court to review and

reject."  *Id.* at *7.   Judge Kahn went on to conclude that the plaintiff was

clearly "asking this Court to review, under the guise of a constitutional due

process claim, the judgments rendered in state court from which her

complained of injury directly flows", and further that

17

> [t]he injury Plaintiff complains of is actually one caused
> by the state court's judgment to allow probate of the will and
> codicil rather than [ the defendants'] alleged forgery of that will
> and codicil. Therefore, the second and third requirements for
> the application of the *Rooker-Feldman* doctrine are present.

Finding further that the state court judgment and appeal were both

rendered years before the plaintiff commenced her federal court action,

Judge Kahn determined that the final requirement of the *Rooker-Feldman*

doctrine was satisfied, and concluded that the court, therefore, lacked

subject matter jurisdiction to hear the action and dismissed the complaint.

*Castiglione,* 2010 WL 2044688, at *7 (record citations omitted).

Another district court, in the Southern District of New York, reached

the same conclusion when presented with similar facts in *Azmendi v.

Roth,* No. 99 CIV. 3663(WK)(DF), 2002 WL 441283 (S.D.N.Y. Mar. 20,

2002).  In that case, the plaintiff, a co-executor of his sister's estate, had

commenced a wrongful death action against Pan American World Airways

in a Florida court relating to her sister's death in the explosion of flight 103

over Lockerbie, Scotland.  In association with the settlement of that action,

a surrogate's court in New York determined that the proceeds of the

settlement of that lawsuit would be distributed in accordance with New

York law, which left the plaintiff receiving nothing from the settlement of

18

the wrongful death action.  Following unsuccessful appeals in the state

courts, the plaintiff filed a federal court action against the surrogate's court

judge, surrogate's court personnel, the judge in the wrongful death action,

most of her former lawyers, and the co-executor of her sister's estate,

alleging civil rights violations under sections 1981, 1983, 1985, and 1986.

The plaintiff asserted that the defendants discriminated against her, and

conspired to discriminate against her in order to deprive her of her

inheritance.  Finding it of no consequence that plaintiff claimed that the

state court violated her constitutional rights, the court dismissed the

plaintiff's claims.  In doing so, the court explained that

> [the plaintiff's] federal claims are exactly the types of claims
> that must be dismissed under the *Rooker-Feldman* doctrine.
> Each of these claims is predicated on an allegedly widespread
> conspiracy-involving [plaintiff's] brother-in-law, her lawyers,
> and the courts of both New York and Florida-to defraud her
> and those she purports to represent of some portion of the
> proceeds of the settlement of the Florida Action. But the
> reason [plaintiff] did not receive any of those proceeds is that
> the Surrogate's Court determined that decedent was domiciled
> in New York at the time of her death. Thus, to remedy the
> alleged conspiracy and other supposedly wrongful acts about
> which [plaintiff] complains, this Court would be required to
> review the decision of the Surrogate's Court or readjudicate
> [plaintiff's] claim that decedent was domiciled in Spain when
> she died. This is "plainly barred" under the *Rooker-Feldman*
> doctrine.

*Azmendi*, 2002 WL 441283, at *10 (record and case citations omitted).

Likewise, in the case at bar plaintiff complains of a far-reaching conspiracy involving his step-sister, the lawyers representing her, and the surrogate's court and court personnel to deprive him of his inheritance. By his own allegations, it is clear that plaintiff fully participated in the surrogate's court proceeding, both by filing various submissions and by personal appearances over the six-year course of that matter.  It is also apparent that plaintiff's assertions of fraud, conspiracy, and criminal conduct in connection with the surrogate's court proceeding were raised but not entertained by that court, and the relief sought by him – his appointment as administrator of his father's estate and the rejection of defendant Nichols' accounting, among other things – was denied by the court. The injury of which plaintiff complains, in the form of discrimination and denial of due process, results directly from that court's decisions.

In sum, the plaintiff's complaint establishes that he litigated unsuccessfully in surrogate's court.  In order to find in plaintiff's favor in this action, the court would not only be called upon to review that court's determination, but to effectively conclude that the surrogate's court's decisions, which were made years before plaintiff filed this lawsuit, were erroneous.  It thus appears that all four criteria for invoking the *Rooker-*

*Feldman* are satisfied here, which leads me to the conclusion that the court lacks subject matter jurisdiction over plaintiff's civil rights claims.  I therefore recommend dismissal of those claims on this basis.

     D.    <u>Additional Defenses</u>

Even assuming, *arguendo*, that subject matter jurisdiction lies in this case, as discussed below, plaintiff's federal claims would still be subject to dismissal based upon defenses that clearly exist on the face of the complaint, as untimely, and on the merits.

     1.    <u>Plaintiff's Claims Against Judge Peckham</u>

Plaintiff alleges claims under sections 1985 and 1981 against Judge Peckam, who presided over the underlying surrogate's court proceeding. The law in this circuit clearly provides that "[j]udges enjoy absolute immunity from personal liability for 'acts committed within their judicial jurisdiction.'"  *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994), *cert. denied* 514 U.S. 1102, 115 S. Ct. 1837 (1995) (quoting *Pierson v. Ray*, 386 U.S. 547, 554, 87 S. Ct. 1213, 1217 (1967)) (emphasis added).  "The absolute immunity of a judge applies however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff."  *Id.* at 51 (citation and internal quotations omitted).  This

protection from suit likewise applies even where there are "allegations of bad faith or malice." *Mireles v. Waco*, 502 U.S. 9, 11, 112 S. Ct. 286, 288 (1991). Two limited exceptions to judicial immunity are recognized where (1) a judge takes nonjudicial action, or (2) the judge's actions, though judicial, are taken in complete absence of jurisdiction. *Id.* at 11-12, 112 S. Ct. at 288 (citations omitted).

Plaintiff's claims against Judge Peckham unquestionably arise out of his rulings in the underlying surrogate's court proceeding. Furthermore, it seems clear that the underlying estate matter was one in which he properly exercised jurisdiction. As a result, Judge Peckham is immune from suit. *Castiglione v. Papa*, No. 1:09-CV-0967, 2010 WL 2044688, at *11 (N.D.N.Y. 2010) (Kahn, J.)l; *Comber v. State of New York*, No. 09 Civ. 5314(RJH)(FM), 2010 WL 3785130, at *9 (S.D.N.Y. Aug. 25, 2010), *report and recommendation adopted*, 2010 WL 3835030 (S.D.N.Y. Oct. 01, 2010). Accordingly, plaintiff's claims against him should be dismissed based upon judicial immunity.

### 2.    Plaintiff's Claims Against Broome County Surrogate's Court Clerk Rebecca Malmquist

Plaintiff sues defendant Malmquist in her capacity as Broome County Surrogate's Court Clerk. The only claims asserted against this

22

defendant are said to arise under sections 1985 and 1981.

The Eleventh Amendment protects a state against suits brought in federal court by citizens of that state, regardless of the nature of the relief sought. *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S. Ct. 3057, 3057-58 (1978). This absolute immunity which states enjoy under the Eleventh Amendment extends to both state agencies and state officials sued in their official capacities, when the essence of the claim involved is one against a state as the real party in interest. *Richards v. State of New York Appellate Division, Second Dep't*, 597 F. Supp. 689, 691 (E.D.N.Y. 1984), (citing *Pugh* and *Cory v. White,* 457 U.S. 85, 89-91 102 S. Ct. 2325, 2328-2329 (1982)). To the extent that a state official is sued for damages in his official capacity the official is entitled to invoke the Eleventh Amendment immunity belonging to the state.[8] *Kentucky v. Graham*, 473 U.S. 159, 166-67, 105 S. Ct. 3099, 3105 (1985); *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 361 (1991). Because plaintiff's claims against Malmquist are made against her in her official capacity, they are in reality claims against the State of New York and typify those against which the Eleventh

---

[8]      By contrast, the Eleventh Amendment does not establish a barrier against suits seeking to impose individual or personal liability on state officials under section 1983. *See Hafer*, 502 U.S. at 30-31, 112 S. Ct. at 364-65.

23

Amendment protects, and are therefore subject to dismissal. *Tarka v. Armstrong*, No. 01 Civ. 5605(LAK)(FM), 2002 WL 31778895, at *3 (S.D.N.Y. Dec. 12, 2002) (dismissing suit against clerk of surrogate's court in his official capacity on sovereign immunity grounds), *aff'd*, 106 Fed. App'x 747 (2d Cir. 2004).  I therefore recommend dismissal of plaintiff's claims against defendant Malmquist on this basis alone.

Sovereign immunity, however, is not the only ground for dismissal of plaintiff's claims against Malmquist.  Even assuming plaintiff had commenced this action against her in her individual capacity, quasi-judicial immunity would protect defendant Malmquist from personal liability.  The doctrine of "[q]uasi-judicial immunity has been extended to those officials 'performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune.'" *Tornheim v. Eason*, 363 F. Supp. 2d 674, 677 (S.D.N.Y. 2005), *aff'd* 175 F. App'x 427 (2d Cir. 2006) (quoting *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994)).  Accordingly, in certain circumstances court clerks enjoy absolute quasi-judicial immunity. *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997).  Such immunity attaches when the clerk is performing tasks that are judicial in nature and an integral part of the

judicial process as well as to administrative functions "if the task was undertaken pursuant to the explicit direction of a judicial officer or pursuant to the established practice of the court." *Humphrey v. Court Clerk for the Second Circuit*, No. 508-CV-0363, 2008 WL 1945308, at *2 (N.D.N.Y. May 1, 2008) (Hurd, J.) (citing *Rodriguez*, 116 F.3d at 66-67). Though still entitled to immunity when performing ministerial, or nonjudicial duties, the protection provided court clerks in those circumstances is not absolute, but instead represents qualified good faith immunity, which shields them from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Isasi v. Heinemann*, No. 2009 WL 159601, *2 (E.D.N.Y. Jan. 22, 2009) (citing *Kane v. Han*, 550 F. Supp. 120, 122-23 (E.D.N.Y.1982)); *Gutierrez v. Vergari*, 499 F. Supp. 1040, 1047 n.5 (S.D.N.Y.1980); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982)).

With regard to defendant Malmquist, plaintiff alleges that at the direction of Judge Peckham, she 1) did not record a proceeding that occurred in his chambers on December 12, 2005, Complaint (Dkt. No. 1) ¶ 136; 2) returned motion papers to him advising that the papers were not

25

permitted by the court rules, *id.* at ¶ 169; 3) at the direction of Judge

Peckham, returned his unsigned and unverified objection to accounting,

*id.* at ¶ 202; 4) did not advise him that he forgot to sign a subpoena

submitted for the judge's consideration; 5) advised that his request for a

copy of a transcript of a hearing conducted May 14, 2007 at the

conclusion of the hearing could not be processed at that time since she

did not have the appropriate forms, *id.* at ¶ 211; 6) authorized defendant

Nichols to file her February 2008 application for extension of letters of

administration without notice and proof of service, *id.* at ¶ 241; and 7)

delayed and withheld the record and transcripts plaintiff requested in order

to pursue his appeals, *id.* at ¶¶ 249, 257.

It seems clear that all of these acts were performed either at the

direction of the judge or in accordance with the court's rules, and all were

performed in furtherance of defendant Malmquist's duties to assist the

judicial process.  *See McCain v. Hermann Law Office*, No.

5:09–cv–165–cr, 2010 WL 3322708, at * 7 (D.Vt. 2010); *McKnight v.*

*Middleton*, 699 F. Supp. 2d 507, 525 (E.D.N.Y. 2010) (citation omitted)

(stating a clerk's acts that implement judicial decisions or that are

performed at the direction or under the supervision of a judicial officer

come under the ambit of judicial immunity, or pursuant to established practice of the court); *Pikulin v. Gonzalez*, No. 07 Civ. 412(CBA), 2007 WL 1063353, at *2 (E.D.N.Y. Apr. 5, 2007) ("Absolute judicial immunity extends to court clerks who are performing tasks 'which are judicial in nature and an integral part of the judicial process ... including the Clerk's Office activities of filing and docketing legal documents ...." (quoting *Rodriguez*, 116 F.3d at 66).

Applying these principles, I have concluded that even if plaintiff had sued defendant Malmquist in her individual capacity, his claims against her would be precluded under the doctrine of quasi-judicial immunity.

### 3.   Plaintiff's Section 1985(3) Conspiracy Claim

Plaintiff's first cause of action alleges that the defendants violated section 1985(3), alleging that there was an agreement among the defendants to deprive him of his inheritance based upon his race. Complaint (Dkt. No. 1) ¶¶ 260-261.  Section 1985(3) creates a cause of action where "two or more persons in any State or Territory conspire ... for the purpose of depriving ... any person ... of the equal protection of the laws, or of equal privileges and immunities under the laws."  42 U.S.C. § 1985(3).  This provision "creates no substantive rights but merely

27

'provides a remedy for violation of the rights it designates[.]'" *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 527 (2d Cir.1996) (quoting *Great Am. Fed. Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 372, 378, 99 S. Ct. 2345(1979)).  District courts in the Second Circuit have consistently found that section 1985(3) provides only a remedy for the deprivation of rights guaranteed by the United States Constitution.  *Neal v. Neal*, No. 7:11–CV–0297, 2011 WL 7176374, at * 5 (N.D.N.Y. Dec. 16, 2011) (Lowe,M.J.) (citations omitted), *report and recommendation adopted*, 2012 WL 399232 (N.D.N.Y. Feb. 08, 2012) (McAvoy, S.J.).

"Claims that arise under § 1985 based on conduct that occurred in New York are governed by a three-year statute of limitations."  *Lomako v. New York Inst. of Tech.*, No. 09 Civ. 6066(HB), 2010 1915041, at *6 (S.D.N.Y. May 12, 2010) (citing *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997)).  For the purposes of section 1985, a claim accrues at the time the discriminatory decisions were made by the alleged conspiracy and plaintiff became aware of such decision.  *Id.* (citing cases).  An action is commenced by the filing of a complaint with the court.  Fed. R. Civ. P. 3; *Walker v. Armco Steel Corp.*, 446 U.S. 740, 751 n.10, 100 S. Ct. 1978, 1985 n.10 (1978).

28

In this instance, according to plaintiff's allegations, the last surrogate's court decision of which plaintiff complains occurred on January 15, 2009, and plaintiff received notice of that decision on January 28, 2009.  Complaint (Dkt. No. 1) ¶ 255.  Because plaintiff filed his action with this court on January 30, 2012, more that three years after the accrual of his section 1985 claim, it appears that the claim is untimely and therefore subject to dismissal on this basis.

Turning to the merits of the claim, to sustain a cause of action for conspiracy to violate civil rights under section 1985(3), a plaintiff must allege and demonstrate that defendants acted with racial or other class-based animus in conspiring to deprive the plaintiff of his or her equal protection of the laws or equal privileges and immunities secured by law. *United Brotherhood of Carpenters & Joiners, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 834-39, 103 S. Ct. 3352, 3359-61 (1983); *Gagliardi v. Village of Paing*, 18 F.3d 188, 194 (2d Cir. 1994); *Gleason v. McBride*, 869 F.2d 688, 694 (2d Cir. 1989); *Patterson v. Cnty. of Oneida*, No. 00-CV-1940, 2002  31677033, at *4 (N.D.N.Y. 2002) (Hurd, J.), *aff'd in relevant part*, 375 F.3d 206 (2d Cir. 2004); *Benson v. United States*, 969 F. Supp. 1129, 1135-36 (N.D. Ill. 1997) (citing, *inter alia*, *United

29

*Brotherhood*, 463 U.S. at 434-37); *see also LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir. 1995).  A plaintiff asserting a claim under section 1985(3) need not necessarily offer proof of an explicit agreement; a conspiracy can, in the alternative, be evidenced circumstantially by a showing that the parties had a "'tacit understanding to carry out the prohibited conduct.'"  *LeBlanc-Sternberr*y, 67 F.3d at 427 (quoting *United States v. Rubin*, 844 F.2d 979, 984 [2d Cir.1988]).  This notwithstanding, in order to properly plead such a claim, a plaintiff must make more than "conclusory, vague, or general allegations of conspiracy." *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir.1983) (per curiam); *Williams v. Reilly*, 743 F. Supp. 168, 173 (S.D.N.Y. 1990) ("[u]nsubstantiated, conclusory, vague or general allegations of a conspiracy to deprive constitutional rights are not enough to survive [even] a motion to dismiss"). "[D]iffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct."  *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)).

Moreover, it is well-settled that a plaintiff attempting to establish a claim under 42 U.S.C. § 1985(3) must demonstrate that the defendant

under consideration acted with class-based, invidiously discriminatory animus. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 266-68, 113 S. Ct. 753, 758-59 (1993). "When a plaintiff fails to establish membership in a protected group, a civil rights conspiracy complaint under 42 U.S.C. § 1985 may be dismissed." *Estes-El v. Town of Indian Lake*, 954 F. Supp. 527, 532 (N.D.N.Y. 1997) (citation and internal quotations omitted).

In this instance, plaintiff alleges that by way of their conspiracy defendants denied him equal protection of the law based upon his race and the fact that he is a non-lawyer. While plaintiff's status as "non-lawyer" fails to supply a basis for a claim that he was treated differently based upon an impermissible consideration, the allegation that he was subjected to discrimination on the basis of race does. *See Caidor v. Onondaga Cnty.*, No. 5:03-CV-00031, 2006 WL 2595202, at *8, 11 (N.D.N.Y. 2006) (McCurn, S.J.). Plaintiff's section 1985(3) claim nonetheless fails since his complaint contains nothing more that broad and unsupported allegations of a conspiracy to violate plaintiff's rights between the named defendants. Despite the fact that plaintiff's complaint includes a highly detailed family history, the relationship between his

31

family members, the property of his father's estate, and the surrogate's

court proceeding, it is devoid of any allegations of fact that would plausibly

give rise to an inference of an agreement between defendants to

discriminate against plaintiff during the course of the surrogate's court

proceeding based on his race.  Indeed, the only allegations supporting

this claim are found in two paragraphs of plaintiff's ninety-four page

complaint wherein he boldly states that "Judge Peckham's conduct was

motivated by Plaintiff's race, African-American, and his status as a non-

lawyer", Complaint (Dkt. No. 1) ¶ 2, and that defendants conspired "to give

property belonging to the black heirs of John R. Sims to his white-wife and

white-step children[,]" which resulted in violation of plaintiff's right to due

process, and equal protection, *id.* at ¶¶ 260-261.  These conclusory

allegations are patently insufficient to give rise to an inference that plaintiff

was subjected to discrimination because he is African American.

I note, moreover, that courts have held, "[a]s a matter of law, rulings

made during the course of state court proceedings are not a sufficient

basis for the Court to find unlawful joint activity among the judges, judicial

employees, and private individuals."  *Combier v. State of New York*, No.

09 Civ. 5314(RJH)(FM), 2010 WL 3785130, at *14 (S.D.N.Y. Aug. 25,

2010) (citing *Dennis v. Sparks*, 449 U.S. 24, 28, 101 S. Ct. 183 (1980)

("[M]erely resorting to the courts and being on the winning side of a

lawsuit does not make a party a coconspirator or a joint actor with the

judge."); *Gangemi v. Johnson*, No. 98 Civ. 8470(SHS), 1999 WL 777861,

at *4 (S.D.N.Y. Sep 30, 1999) (same))*,report and recommendation*, 2010

WL 3835030 (S.D.N.Y. Oct. 1, 2010).  At the heart of plaintiff's claims is

his assertion that the surrogate's court judge and his staff were biased

against him as evidenced by determinations made over the course of the

underlying estate proceeding, a claim that fails as a matter of law to

support a federal discrimination cause of action.

In sum, even when liberally construed, plaintiff's complaint fails to

set forth any allegations plausibly suggesting a constitutional or federal

statutory violation, and instead reveals nothing more than a family dispute

over his father's estate and his dissatisfaction with the outcome of the

surrogate's court proceeding.  For all of the foregoing reasons, I have

concluded that plaintiff has failed to state a plausible claim for violation of

section 1985, and I therefore recommend dismissal of this claim on this

basis, and additionally as time-barred.

4.    Plaintiff's Claims Under Section 1981

33

Although identified as a claim asserted under section 1985(3),

plaintiff's first cause of action also references section 1981.  That section

protects equal rights, providing that:

> All persons within the jurisdiction of the United States shall
> have the same right in every State and Territory to make and
> enforce contracts, to sue, be parties, give evidence, and to the
> full and equal benefit of all laws and proceedings for the
> security of persons and property as is enjoyed by white
> citizens, and shall be subject to like punishment, pains,
> penalties, taxes, licenses, and exactions of every kind, and to
> no other.

42 U.S.C. § 1981.[9]  Plaintiff's *prima facie* pleading obligation as to this

cause of action closely parallels the requirements under section 1985.  In

order to establish a claim under section 1981, a plaintiff must allege facts

showing 1) membership in a racial minority, 2) an intent by the defendant

to discriminate on the basis of race, and, 3) the discrimination concerned

at least one of the activities enumerated in the statute such as, for

example, the making or enforcement of contents, suing or being sued, or

giving evidence.  *Mian v. Donaldson, Lufkin & Jenrette Securities Corp*., 7

F.3d 1085 (2d Cir. 1993) (citation omitted).  Like a claim under section

1985(3), "naked assertions of racial motivation will not suffice to state a

---

[9]     Unlike section 1985(3), the statute of limitations for a claim under section 1981 is four years.  *Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369, 382, 124 S. Ct. 1836, 1845 (2004).

cause of action" under section 1981. *Boomer v. Bruno*, 134 F. Supp. 2d 262, 269 (N.D.N.Y. 2001) (citing *Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir. 1994)).  Instead, a plaintiff must allege specific "events claimed to constitute intentional discrimination as well as the circumstances giving rise to a plausible inference of racially discriminatory intent."  *Yusuf*, 35 F.3d at 713 (citations omitted).  Additionally, the plaintiff must allege that similarly situated persons were treated differently. *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994).

Plaintiff's section 1981 claim fails for essentially the same reasons that his section 1985(3) is subject to dismissal; the complaint contains a single broad and unsupported assertion that plaintiff was subjected to discrimination based upon his race and  is devoid of factual allegations demonstrating concrete instances in which he suffered discrimination, or facts raising the inference that the surrogate's court personnel, including Judge Peckham, intentionally discriminated against plaintiff because he is African American.  As a result, plaintiff has failed to state a plausible claim under section 1981, and I therefore recommend dismissal of that cause of action.

5.    Supplemental Jurisdiction

The remaining claims alleged in plaintiff's complaint all arise under
New York law.  The final question to be addressed is therefore whether
the court should exercise supplemental jurisdiction over plaintiff's state
law claims.

28 U.S.C. § 1367 authorizes a federal court to decline supplemental
jurisdiction over a state claim if all of the claims over which the court had
original jurisdiction were dismissed.  *Stephenson v. Albany County
Policymakers*, Civ. No. 6:09-CV-326, 2009 WL 2922805, at *2 (N.D.N.Y.
Aug. 14, 2009) (Kahn, J. & Treece, M.J.) (citing 28 U.S.C. § 1367(c)(3)).
A district court may, in the exercise of its discretion, entertain
supplemental jurisdiction over state law claims, even where all federal
causes of action have been dismissed, in order to further "fairness" or
"judicial efficiency," or to resolve any "novel or unsettled issues of state
law."  *Trade Wind Distrib., LLC v. Unilux Ag*, No. 10 Civ. 5716(BMC), 2011
WL 4382986, at *8 (E.D.N.Y. Sep. 20, 2011) (citing *Mauro v. Southern
New England Telecomms., Inc.*, 208 F.3d 384, 388 (2d Cir.2000)).  In
general, however, when all claims that independently support federal
jurisdiction have been dismissed, "the balance of factors ... will [usually]

point toward declining to exercise jurisdiction over the remaining state law claims." *Id.* (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S.Ct. 614 (1988)) (alteration in original).

In this case, since I have concluded that the court lacks jurisdiction to hear plaintiff's federal claims under *Rooker- Feldman*, the court similarly lacks supplemental jurisdiction over plaintiff's state law claims. *Azumendi*, 2002 WL 441283, at *11-12.   Even if this were not the case, I would recommend that the court decline to exercise supplemental jurisdiction over those claims since the complaint does not raise any novel issues of law, and exercising supplemental jurisdiction in this case would not seem to advance the interests of fairness or judicial economy.  I therefore also recommend dismissal of plaintiff's state law claims.

E.    Leave to Amend

Generally, when a *pro se* action is dismissed *sua sponte*, the plaintiff should be allowed to amend his or her complaint.  *See Gomez v. USAA Federal Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999).  However, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (finding

37

that repleading would be futile) (citation omitted); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.")  (affirming, in part, dismissal of claim with prejudice) (citation omitted); *cf. Gomez*, 171 F.3d at 796 (granting leave to amend is appropriate "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim.").  Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend."  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (citations omitted); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted).

The principal deficiency noted in this instance is that the court lacks jurisdiction to hear plaintiff's federal claims, a defect that cannot be cured by better pleading.  For this reason, I recommend that plaintiff's complaint be dismissed without leave to amend.

IV.   <u>CONCLUSION</u>

From a review of plaintiff's lengthy complaint it seems clear that even though he participated fully in the surrogate's court proceeding relating to his father's estate, including by going to great lengths to disqualify his step sister, defendant Nichols, as administrator of the estate and Judge Peckham as the assigned judge, he is nonetheless dissatisfied with the outcome, and that disgruntlement forms the basis for this lawsuit. Unfortunately, however, not only has the plaintiff failed to allege a plausible federal claim supporting his contention that he suffered discrimination and was denied due process in the state court proceeding, but because the federal courts lack jurisdiction to review state court judgments, this court is without authority to entertain plaintiff's complaint, which clearly challenges the propriety of the state-court judgment.  For all of the foregoing reasons, it is therefore hereby respectfully

RECOMMENDED that plaintiff's complaint be dismissed in its entirety, without leave to amend.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.

 FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d),

72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby further ORDERED that plaintiff's application to proceed

*in forma pauperis* (Dkt. No. 2) be GRANTED; and it is further,

ORDERED that the clerk of the court serve a copy of this report,

recommendation, and order upon the parties in accordance with this

court's local rules.

David E. Peebles
U.S. Magistrate Judge


Dated:     May 18, 2012
           Syracuse, NY